```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                                              :
FEDERAL INSURANCE COMPANY,                                    :
                                            Plaintiff,        :
                                                              :     24 Civ. 1557 (LGS)
                   -against-                                  :
                                                              :     OPINION AND ORDER
                                                              :
MT. HAWLEY INSURANCE COMPANY,                                 :
                                            Defendant.        :
------------------------------------------------------------- X
```

LORNA G. SCHOFIELD, District Judge:

Plaintiff Federal Insurance Company ("Federal") brings this action against Defendant Mt. Hawley Insurance Company ("Mt. Hawley"). Federal seeks (1) a declaration that Mt. Hawley has a duty to indemnify Wieden & Kennedy, Inc. ("W&K"), Federal's insured, for liabilities incurred in connection with a personal injury lawsuit, described below, and that this duty is primary; (2) an order that Mt. Hawley reimburse Federal for all payments Federal made on W&K's behalf and (3) attorneys' fees. The parties cross-move for summary judgment. For the reasons below, Federal's motion is granted, and Mt. Hawley's motion is denied.

I.  **BACKGROUND**

The following facts are drawn from the parties' statements pursuant to Federal Rule of Civil Procedure 56 and Local Civil Rule 56.1 and other submissions on these motions. The facts are undisputed except as noted.

This insurance dispute arises out of an accident at 150 Varick Street, New York. At the time, W&K rented the sixth and seventh floors from W&M Operating, LLC ("W&M"), owner of 150 Varick Street. W&K sought to renovate the rented floors for its office space. Part of the renovation involved "open[ing] up" the inside space on the corner of both floors "to create an area

open to the outside." W&K retained Conelle Construction Corp. ("Conelle") to be the general contractor for the project. Conelle hired Vincent Cascone Contracting ("Cascone"), a subcontractor, who in turn hired Amazing Drywall Projects, Inc.

Federal issued to W&K, the tenant, a primary liability policy and an excess liability policy. Mt. Hawley issued to Conelle, the general contractor, a commercial general liability insurance policy and an excess liability policy. Mt. Hawley's excess policy follows form to the primary policy and "is subject to all of the conditions, agreements, exclusions, and limitations of and shall follow" the primary policy. Relevant here and discussed below are two provisions in the Mt. Hawley policies -- the additional insured provision "for owners, lessees or contractors," and the exclusion for "designated ongoing operations."

An employee of Amazing Drywall Projects, Inc., Mauro Cordova, worked on the construction project. On January 12, 2013, Cordova climbed up a pipe scaffold on site to install some cut plywood. As he descended, the scaffold collapsed, injuring Cordova.

Cordova brought personal injury suits against W&M, W&K, Conelle and Cascone in New York Supreme Court, Kings County, consolidated in case No. 1349/2013 (the "Underlying Action"). Cordova asserted claims for common law negligence and violations of New York Labor Law §§ 200, 240(1)-(3) and 241(6) against all defendants. W&K and W&M asserted cross-claims against Conelle and Cascone for indemnification.

Federal provided a defense to W&K, its insured, and to W&M, the owner of the building, whom W&K is contractually obligated to indemnify. Federal tendered the defense of W&M to Mt. Hawley, which Mt. Hawley denied. Federal brought a suit against Mt. Hawley for a declaratory judgment that W&K, Federal's insured, is entitled to both a defense and indemnification as an additional insured under the Mt. Hawley policies. Shortly after, Federal and

Mt. Hawley reached a settlement whereby Federal would continue the defense of W&K and Mt. Hawley would pay Federal $70,000 in past defense costs and two thirds of all future defense costs.  The settlement left open the question of indemnification.

On June 8, 2023, Justice Maslow, in the Underlying Action, granted summary judgment to Cordova on his claim of statutory liability under New York Labor Law § 240(1) against all defendants and granted summary judgment to W&K, W&M and Conelle on Cordova's claim for negligence under New York Labor Law § 200.  Justice Maslow denied summary judgment to W&M and W&K on their indemnification claims against Conelle and Cascone "upon questions of fact."

The parties proceeded to trial on Cordova's damages.  On February 9, 2024, before the jury announced its verdict, the parties to the Underlying Action entered into a so-called "high-low settlement" before Justice Stein.  In exchange for Cordova's release of his claims against all defendants, W&K would pay Cordova a sum between $2.2 million and $8.95 million, inclusive.  Because Cordova was awarded $10.25 million by the jury, Federal, on behalf of W&K, paid Cordova $8.95 million.  On May 16, 2024, Justice Stein granted a directed verdict in favor of W&K on the only remaining issue of Conelle's contractual obligation to indemnify W&K.  This action followed as Federal sought indemnification from Mt. Hawley for Federal's payment of $8.95 million in settlement on behalf of W&K.

## II.     STANDARD

### A.     Insurance Contract Interpretation

Under New York law,[1] "[a]n insurance agreement is subject to principles of contract interpretation." *Burlington Ins. Co. v. NYC Transit Auth.*, 79 N.E.3d 477, 481 (N.Y. 2017).[2] "Determining whether a contract is ambiguous is an issue of law for the courts to decide." *Donohue v. Cuomo*, 184 N.E.3d 860, 867 (N.Y. 2022). "[T]he test to determine whether an insurance contract is ambiguous focuses on the reasonable expectations of the average insured upon reading the policy and employing common speech." *Universal Am. Corp. v. Nat'l Union Fire Ins. Co.*, 37 N.E.3d 78, 81 (N.Y. 2015).

"Ambiguity in a contract arises when the contract, read as a whole, fails to disclose its purpose and the parties' intent, or when specific language is susceptible of two reasonable interpretations." *Donohue*, 184 N.E.3d at 867. "[A]ny ambiguity must be construed in favor of the insured and against the insurer." *Lend Lease (US) Constr. LMB Inc. v. Zurich Am. Ins. Co.*, 71 N.E.3d 556, 560 (N.Y. 2017).

"[A] contract is not ambiguous if the language it uses has a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion." *In re Viking Pump, Inc.*, 52 N.E.3d 1144, 1151 (N.Y. 2016). "[P]rovisions are not ambiguous merely because the parties

---

[1] New York law governs the causes of action in this case because New York is the "principal location of the insured risk," *RLI Ins. Co. v. AST Eng'g Corp.*, Nos. 20-214-CV, 20-596-CV, 2022 WL 107599, at *2 (2d Cir. Jan. 12, 2022) (summary order), and because the parties' submissions assume that New York law applies. *See In re Snyder*, 939 F.3d 92, 100 n.2 (2d Cir. 2019) ("[I]mplied consent is . . . sufficient to establish the applicable choice of law.").

[2] Unless otherwise indicated, in quoting cases, all internal quotation marks, footnotes and citations are omitted, and all alterations are adopted.

interpret them differently." *Universal Am. Corp.*, 37 N.E.3d at 80. "[U]nambiguous provisions of an insurance contract must be given their plain and ordinary meaning." *Gilbane Bldg. Co./TDX Constr. Corp. v. St. Paul Fire & Marine Ins. Co.*, 97 N.E.3d 711, 712-13 (N.Y. 2018).

    **B.**     **Cross-Motions for Summary Judgment**

Summary judgment is appropriate where the record establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020). "The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment, and in assessing the record to determine whether there is a genuine issue as to a material fact, the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Id.*

On cross-motions for summary judgment, "the court evaluates each party's motion on its own merits and all reasonable inferences are drawn against the party whose motion is under consideration." *Roberts v. Genting N.Y. LLC*, 68 F.4th 81, 88 (2d Cir. 2023). "[W]here a movant has shown the existence of a material fact and the nonmovant wishes to challenge it, the nonmovant bears the burden of production to point to significant probative evidence (that is, more than a scintilla of evidence) from which a reasonable factfinder could find for the nonmovant." *Gov't Emps. Ins. Co. v. Mayzenberg*, 121 F.4th 404, 413-14 (2d Cir. 2024) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)), *unrelated certified question accepted*, No. 129, 2024 WL 5131318 (N.Y. Dec. 17, 2024). "Demonstrating that such issues exist requires the nonmovant to do more than simply show that there is some metaphysical doubt as to the material facts." *McKinney v. City of Middletown*, 49 F.4th 730, 738 (2d Cir. 2022).

The nonmovant cannot merely "deny the moving party's allegations in a general way," but instead "must present competent evidence that creates a genuine issue of material fact." *Id.*

In the insurance context, the insured -- in this case represented by Federal, who paid on behalf of its insured, W&K -- bears the "burden to establish the existence of coverage," and Mt. Hawley, as insurer, "has the burden of proving the applicability of an exclusion." *Platek v. Town of Hamburg*, 26 N.E.3d 1167, 1171 (N.Y. 2015).

## III.  DISCUSSION

Mt. Hawley has a duty to indemnify W&K because (1) W&K is an additional insured on Mt. Hawley's policies, (2) the designated work exclusion provision (the "Exclusion") in Mt. Hawley's policies does not apply and (3) Mt. Hawley's policies provide coverage primary to that provided by Federal's policies.  Summary judgment is granted to Federal and denied to Mt. Hawley.

### A.  Additional Insured Status

Federal has established that W&K qualifies as an additional insured under Mt. Hawley's policies.  An endorsement to the Mt. Hawley policies includes as an "additional insured" "All Owners where [additional insured coverage is] required by written contract," "but only with respect to liability for 'bodily injury' . . . caused, in whole or in part, by '[Conelle's] work' at the location . . . performed for that additional insured . . . ."  The parties do not dispute that W&K is an "Owner," that the written contract between W&K and Conelle required Conelle to obtain additional insured coverage for W&K, and that Conelle's work as the general contractor at the location was performed for W&K.

The undisputed evidence establishes, despite Mt. Hawley's arguments to the contrary, that Conelle's work *caused* W&K's liability in the Underlying Action.  In *Burlington Insurance*

*Co. v. NYC Transit Authority*, 79 N.E.3d 477 (N.Y. 2017), the New York Court of Appeals interpreted the term "caused" in a similar endorsement to cover only liability (1) "proximately caused" by (2) the named insured's "negligence or some other actionable acts or omissions."[3] 79 N.E.3d at 478, 481-82 (construing an insurance policy restricted to liability for any bodily injury "caused, in whole or in part," by the "acts or omissions" of the named insured). "[P]roximate cause refers to a legal cause to which the Court has assigned liability." *Id.* at 481.

W&K's liability was "proximately caused" in part by Conelle's "actionable acts or omissions." In the Underlying Action, Cordova alleged that he "was caused to fall from said scaffold by reason of the negligence of the defendant, its agents, servants and/or employees," who "failed to provide [Cordova] with proper and safe elevated working surfaces, scaffolds and ladders . . . to prevent [Cordova] from falling." Justice Maslow granted summary judgment to Cordova on his New York Labor Law § 240(1) claim against all four defendants, including Conelle. New York Labor Law § 240(1) states that "[a]ll contractors and owners . . . shall furnish . . . scaffolding . . . which shall be so constructed, placed and operated as to give proper protection . . . ." New York courts have interpreted this statute to impose liability on contractors and owners "only where the plaintiff's injuries were the direct consequence of a failure to provide adequate protection against [the] risk . . . ." *O'Brien v. Port Auth. of N.Y. & N.J.*, 74 N.E.3d 307, 310 (N.Y. 2017). Therefore, "to recover under [New York Labor Law §] 240(1), the plaintiff must establish that the statute was violated and that such violation was a proximate

---

[3] The *Burlington* requirement of "negligence or some other actionable acts or omissions" is derived from the "acts or omissions" language in the Burlington policy. 79 N.E. at 482. The corresponding language in the Mt. Hawley policies is "work," leading to a corresponding requirement here for "negligence or some other actionable [work conduct]." *Id.* Because application of this language does not lead to a different result, the *Burlington* language requiring "negligence or some other actionable acts or omissions" is used.

7

cause of his injury." *Barreto v. Metro. Transp. Auth.*, 34 N.E.3d 815, 819 (N.Y. 2015). Justice Maslow's order, however summarily, necessarily concludes that the four defendants, including Conelle and W&K, violated the statute, and their violations proximately caused Cordova's injury. W&K thus qualifies as an additional insured under Mt. Hawley's policies because W&K's liability for Cordova's injury was proximately caused by Conelle's actionable acts or omissions, namely, the failure to provide adequate protection. This is not a case like *Burlington* where the additional insured (here W&K) was the sole proximate cause of the injury. 79 N.E.3d at 480-81.

Mt. Hawley argued: (1) Justice Maslow, in the same order, granted summary judgment to Conelle and other defendants on Cordova's New York Labor Law § 200 claim, a claim sounding in negligence, thus absolving Conelle of negligence and (2) absent a determination that Conelle was negligent, *Burlington* bars coverage of W&K as an additional insured. This argument is unavailing. First, Justice Maslow's decision does not rule out Conelle's negligence; Cordova's successful § 240(1) claim may have rendered his § 200 claim unnecessary. Nor did Justice Maslow rule on Cordova's common law negligence claim.

Second, even if Conelle was not negligent, *Burlington* expressly stated that its interpretation of "cause" as proximate cause "d[id] not compel the conclusion that the endorsement incorporate[d] a negligence requirement . . . ." 79 N.E.3d at 483. The Court of Appeals in *Burlington* recognized coverage "for damages resulting from [the named insured's] negligence *or some other actionable acts or omissions*." *Id.* at 482 (emphasis added). *Old Republic General Insurance Corp. v. Consolidated Edison Co. of New York Inc.*, 146 N.Y.S.3d 620 (1st Dep't 2021), the case on which Mt. Hawley relied, states the same: the additional insured coverage "requir[es] a showing that the named insured's *causal* conduct was negligent or

8

*otherwise at fault*." *Id.* at 622 (emphasis added).  Conelle was at fault for failing to provide adequate protection as required by New York Labor Law § 240(1).  *See Barreto*, 34 N.E.3d at 819.  Other cases on which Mt. Hawley relied are distinguishable because here a court has found that Conelle was a proximate cause of Cordova's injury.

### B.     The Exclusion

Mt. Hawley has not established that the Exclusion applies.  Mt. Hawley's policies include an endorsement titled "EXCLUSION -- DESIGNATED WORK, which excludes from coverage "'bodily injury' . . . arising out of . . . [a]ll exterior work above 2 stories . . . ."  The language is unambiguous and should be given its plain and ordinary meaning.  *See Burlington*, 79 N.E.3d at 481.  Exterior means "situated on the outside."  *Exterior*, Merriam-Webster, https://www.merriam-webster.com/dictionary/exterior (last visited Mar. 24, 2025).  In this context, work means "activity in which one exerts strength or faculties to do or perform something: . . . a specific task, duty, function, or assignment often being a part or phase of some larger activity."  *Work*, Merriam-Webster, https://www.merriam-webster.com/dictionary/work (last visited Mar. 24, 2025); *see Lighton Indus., Inc. v. Allied World Nat'l Assurance Co.*, 348 F. Supp. 3d 167, 191 (E.D.N.Y. 2018) (concluding "that work refers to specific action(s) by individual persons aimed at completing a task or tasks," in contrast to the broader "project").  The Exclusion thus carves out specific actions performed outside of the building from coverage.

The Exclusion does not apply to Cordova's injury because he did not install plywood on the exterior of the building.  Cordova's testimony states that his accident happened "inside the building."  On that day, Cordova ascended a pipe scaffold placed on the concrete floor of the building's sixth floor.  Standing on the platform in the scaffold, he installed the previously cut plywood on an interior wall about two feet away.  When he began to descend, the scaffold

9

collapsed, and he fell onto the floor between the scaffold and the wall. Nothing in the record suggests that any of Cordova's specific actions, cutting or installing the plywood, occurred outside the building; nor was he physically positioned outside the building.

Mt. Hawley argued that, during the renovation, the area was converted from an indoor space to an open-air park or balcony exposed to the elements, rendering Cordova's work exterior. This argument is unpersuasive for two reasons. First, the area was, and remains, within the four corners of the building structure. Removing the side windows and the internal ceiling and flooring to make one atrium-like space did not move the subject area to the outside. While the contract between W&K and Conelle refers to the area as a garden, park or balcony, the area remains structurally different from an elevated park or balcony protruding out from the main structure, where construction work would involve "obviously much greater risk." *See Admiral Ins. Co. v. Joy Contractors, Inc.*, 972 N.E.2d 103, 110 (N.Y. 2012) (comparing the risk of "exterior construction work with a tower crane at a height many stories above grade" with the risk of "interior drywall installation"). Second, even assuming the project had an exterior component, that does not transform Cordova's endeavors into "exterior work" absent evidence that his specific actions were tied to the exterior component. In *Dormitory Authority v. RLI Insurance Co.*, 143 N.Y.S.3d 31 (1st Dep't 2021), the Appellate Division's First Department refused to apply a similar exclusion even when the injury occurred outside of the building, because the injured "was wiring the interior of the library" and thus that work was "outside the scope of the exclusion." *Id.* at 33. In any event, "[e]xclusions are not to be extended by interpretation or implication, but are to be accorded a strict and narrow construction." *Wesco Ins. Co. v. Mt. Hawley Ins. Co.*, 207 N.Y.S.3d 478 (1st Dep't 2024). Mt. Hawley has failed to carry its burden to show that the Exclusion applies.

### C.     Primary Coverage

Mt. Hawley's policies are primary.  W&K's primary policy with Federal contains an "Other Insurance" provision which states, in relevant part, "This insurance is excess over any other insurance . . . provided to you by any person or organization working under contract or agreement for you; or [] under which you are included as an insured."  The Mt. Hawley policies, both primary and excess, satisfy both conditions.  Conelle is an organization working under contract from W&K, and W&K is an additional insured under the Mt. Hawley policy as discussed above.  Therefore, pursuant to W&K's insurance contract with Federal, the Federal policy is excess over the Mt. Hawley policies.

The plain language in the Mt. Hawley policies also confirms their primary coverage.  The "Other Insurance" provision in the Mt. Hawley primary policy states, "This insurance is primary except when [any exception] below applies."  The enumerated exceptions are inapplicable.  The "Other Insurance" provision in the Mt. Hawley excess policy was amended to be, "To the extent required under written contract and provided by the underlying insurance, this policy will apply as primary insurance, excess of scheduled underlying insurance, to additional insureds and other insurance which may be available to such additional insureds will be non-contributory."  Both conditions are met. Section 11.1 of the W&K/Conelle Contract requires that Conelle purchase an insurance policy that protects W&K from liability arising out of Conelle's operations, and that "[t]he coverage afforded under any [such] policy . . . shall be primary to any valid and collectible insurance carried separately by [W&K]."  The underlying Mt. Hawley primary policy also provides primary coverage.  The Mt. Hawley excess policy thus provides coverage primary to W&K's other insurance coverage from Federal.

11

Mt. Hawley argues that its excess policy should be excess of Federal's primary policy because the latter is a primary policy that must be exhausted before any excess policy is triggered. This argument is unpersuasive because "New York's horizontal exhaustion rule" -- which "mandates all primary policies be exhausted before excess coverage is triggered" -- has no applicability here. *Scottsdale Ins. Co. v. Mt. Hawley Ins. Co.*, 183 N.Y.S.3d 83, 85 (1st Dep't 2023), *leave to appeal dismissed in part, denied in part*, 229 N.E.3d 628 (N.Y. 2024). First, the rule has no relevance when W&K and Conelle have an underlying indemnity agreement. "Since the owner [W&K] was entitled to contractual indemnification from the general contractor [Conelle] due to a complete pass-through of liability, the excess policy issued to [Conelle] must respond before the primary and excess policies issued to [W&K]." *Id.*; *see Century Sur. Co. v. Metro. Transit Auth.*, No. 20-1474-CV, 2021 WL 4538633, at *5 (2d Cir. Oct. 5, 2021) (summary order) (analyzing New York caselaw and concluding that the general contractor's insurer "is liable to pay into the underlying settlement and exhaust its policy limits before" the premises owner's insurer due to the general contractor's contractual obligation to indemnify the owner). Second, the Mt. Hawley excess policy is not a true excess policy under New York's horizontal rule. Unlike the policies in the cases Mt. Hawley cites, the Mt. Hawley excess policy is not denominated as an "umbrella insurance policy," suggesting an "intent to provide [only] a final tier of coverage"; nor does Mt. Hawley's excess policy contain language that makes its coverage "in excess of all other coverage available, including excess coverage." *Bovis Lend Lease LMB, Inc. v. Great Am. Ins. Co.*, 855 N.Y.S.2d 459, 466 (1st Dep't 2008) (addressing the disputed "Commercial Umbrella Liability Policy"); *see Tishman Constr. Corp. of New York v. Great Am. Ins. Co.*, 861 N.Y.S.2d 38, 40 (1st Dep't 2008) (addressing the defendant's "Protector Commercial Umbrella Coverage" policy).

Summary judgment is granted to Federal on Mt. Hawley's duty to indemnify W&K, and in this case, to reimburse Federal for payment on behalf of W&K in the Underlying Action. The Court understands that the determination of that amount pursuant to the parties' settlement agreement is currently before Justice Stein in the Underlying Action.

## IV. CONCLUSION

For the foregoing reasons, summary judgment is **GRANTED** to Federal and **DENIED** to Mt. Hawley. It is hereby declared that (1) Mt. Hawley has a duty to indemnify W&K, pursuant to the Mt. Hawley policies, for liabilities incurred by W&K in the Underlying Action; and (2) Mt. Hawley's duty to indemnify is primary to the insurance coverage issued to W&K by Federal. It is hereby **ORDERED** that Mt. Hawley shall reimburse Federal for all indemnity payments made by Federal on W&K's behalf up to the amount of insurance to the extent required and provided for in the W&K/Conelle Contract.

The Clerk of Court is respectfully directed to close the motion at Dkt. 34 and close this case.

Dated: March 26, 2025
       New York, New York

_____
LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE